UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| JAMIE N. LOCKARD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs | ) Cause No. 4:09-cv-113-RLY-WGH |
| | ) |
| THE CITY OF LAWRENCEBURG, IN, | ) |
| BRIAN MILLER, In his Individual Capacity, | ) |
| DEARBORN COUNTY HOSPITAL, | ) |
| RONALD C. CHEEK, M.D., MICHAEL | ) |
| LANNING, BARBARA GURLEY, DEBORAH | ) |
| WALSTON, JOHN DOE #1, JOHN DOE #2, | ) |
| JANE DOE #1, AND JANE DOE #2 | ) |
| | ) |
|     Defendants | ) |

**MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

Come now, the defendants, Brian Miller, Michael Lanning and the City of Lawrenceburg, (collectively "Lawrenceburg") and submit this Memorandum of Law in Support of Motion for Summary Judgment.

Statement of Material Facts Not in Dispute

On Friday, March 13, 2009, the plaintiff was stopped by Lawrenceburg Police Officer Brian Miller for failing to stop at a stop sign. Complaint and Demand for Jury Trial, ¶¶11-15. Upon approaching the vehicle, Officer Miller smelled the odor of an alcoholic beverage and began investigating the plaintiff for operating while intoxicating. Complaint and Demand for Jury Trial, ¶16. As part of the investigation, Officer Miller performed a portable breath test, which resulted in a reading of 0.07%. Complaint and Demand for Jury Trial, ¶18.

1

The stop and subsequent investigation is captured on video recorded in Officer Miller's police vehicle.  Affidavit of Brian Miller, ¶ 3.  That video reveals that Mr. Lockard failed field sobriety tests administered by Officer Miller.  Affidavit of Brian Miller, ¶ 4, *Affidavit Exhibit 1*.

After the field sobriety tests, Officer Miller arrested Mr. Lockard. Affidavit of Brian Miller, ¶ 5.  Then, Officer Miller applied for a search warrant, which was issued at 12:10 a.m.  Affidavit of Brian Miller, ¶ 6, *Affidavit Exhibit 2*.

The warrant provides as follows, in relevant part: "You are hereby authorized and ordered, in the name of the State of Indiana with the necessary and proper assistance to obtain and remove a blood and urine sample from Jamie N. Lockard." Affidavit of Brian Miller, ¶ 6, *Affidavit Exhibit 2*. It goes on to note that Officer Miller was "ordered to seize such sample, obtained on such search, and forward such samples for immediate analysis." Affidavit of Brian Miller, ¶ 6, *Affidavit Exhibit 2*.

After receiving the signed warrant, Officer Miller took Mr. Lockard to the hospital. Complaint, ¶23.

On arrival at the hospital, Mr. Lockard voluntarily provided a sample of his blood. Complaint, ¶24. He was then asked to provide a urine sample.  Deposition of Deborah Walston, 13:17-13:23.  Mr. Lockard refused to provide a urine sample. Deposition of Deborah Walston, 13:17-13:23, Complaint and Demand for Jury Trial, ¶¶ 26, 32.

At that time, the attending physician, Dr. Cheek, asked Officer Miller if Officer Miller wanted a catheterization of Mr. Lockard to be performed in order to obtain the urine sample. Deposition of Ronald Craig Cheek, M.D., 12:20-14:11.  Dr. Cheek then ordered a catheterization of Mr. Lockard.  Dr. Cheek is the ultimate authority with respect to such medical procedures. Deposition of Ronald Craig Cheek, M.D., 14:9-14:19.

Officer Miller requested that the urine sample be obtained because he had learned during his

2

training that both blood and urine should be obtained in order to allow for preliminary testing on the urine and subsequent testing on the blood. Deposition of Brian A. Miller, 16:9-16:20. That instruction came from Dr. Wagner, the head of the Department of Toxicology at Indiana University. Deposition of Brian A. Miller, 16-16:20. Officer Miller provided additional testimony revealing why both blood and urine samples are preferred:

> "Q   What reason did you have to ask for both blood and urine prior to this training seminar?
>
> A   First off, the state kit from the Department of Toxicology has vials for blood and urine inside of it.
>
> Second off, urine is another piece of evidence that we had to show drug use. At one time, talking with the hospital, it changed, from my understanding, of whether they were testing for drugs more in the blood or more in the urine. So at some point we started collecting both so we would have both available."
>
> Deposition of Brian A. Miller, 20:5-20:16.

Moreover, once the warrant was issued to require both blood and urine from Mr. Lockard, Officer Miller testified that he had no choice in obeying that judicial order:

> "Q   As we're sitting here today, do you think it was proper to forcibly catheterize Mr. Lockard?
>
> A   I think it was a medical procedure that the search warrant says to obtain with proper assistance. I believe a medical procedure is proper assistance.
>
> Q   Do you think you had any choice in the matter?
>
> A   No.
>
> Q   Your understanding is that you had a court order, you had no choice but to order a forcible catheterization of Mr. Lockard?
>
> A   My opinion is I had a court order and I requested a medical procedure to comply with that court order.

3

Deposition of Brian A. Miller, 56:10-56:25.

The results of the blood and urine samples revealed that Mr. Lockard tested positive for controlled substances. Deposition of Brian A. Miller, 56:5-56:9.

The amended toxicology report revealed that Mr. Lockard tested positive for benzodiazepines, opiates, marijuana, oxycodone, opioids, and MDMA. The urine sample revealed that Mr. Lockard testified positive for benzodiazepines, opiates, and marijuana. Amended Toxicology Report, pp. 8-9. The toxicology report regarding alcohol revealed that Mr. Lockard tested positive for .05% alcohol content in his blood and .08% in his urine. Toxicology Report, p. 10.

Mr. Lockard was charged with obstruction of justice, a Class D felony, for refusing to consent or cooperate in the catheterization. Complaint and Demand for Jury Trial, ¶31.

### Standard of Review on Summary Judgment

> Summary judgment is appropriately granted if the party seeking the judgment demonstrates that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law through records materials with the court (i.e. pleadings, depositions, answers to interrogatories, admissions on file, and affidavits). *See,* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Reid v. Norfolk & Western Ry. Co.*,* 157 F.3d 1106, 1110 (7th Cir. 1998); Fed.R.Civ.P. 56(c). Once the movant has met this burden, the nonmovant must set forth specific facts demonstrating that a genuine issue of material fact exists for trial, and may not rely upon mere allegations or denials of the pleadings. *See,* Gonzalez v. Ingersoll Milling Mach. Co.*,* 133 F.3d 1025, 1031 (7th Cir. 1998); Fed.R.Civ.P. 56(e).
>
> Wollin v. Gondert, 192 F.3d 616, 620-621 (7th Cir. 1999).

Discussion

A. <u>The Alleged Facts, Taken as True, Do Not Amount to a Constitutional Violation</u>.

Section 1983 imposes liability only for violations of rights protected by the constitution and the laws of the United States. <u>White v. Olig</u>, 56 F.3d 817, 820 (7th Cir. 1995).

When a search warrant is issued, a suspect's consent (express or implied by law) is unnecessary; that is one of the purposes of obtaining a warrant, and the reason no warrant is required when a suspect consents to a search. *See*, <u>United States v. Navarro</u>, 90 F.3d 1245, 1254 (7th Cir.1996) ("The search required either a warrant, consent to search, or probable cause to believe the truck contained drugs; once probable cause was found for the warrantless search, consent was unnecessary.").

A non-consensual catheterization, standing alone, does not amount to a constitutional violation. *See*, <u>Sparks v. Stutler</u>, 71 F.3d 259 (7th Cir. 1995), <u>Saulsberry v. Maricopa County</u>, 151 F.Supp. 2d 1109 (D. Ariz. 2001), <u>Rudy v. Village of Sparta</u>, 990 F.Supp. 924 (W.D. Mich. 1996). As such, the catheterization of Mr. Lockard was reasonable and constitutional as a matter of law.

Moreover, Officer Miller acted in accordance with a valid judicial order from the Dearborn Circuit Court when he requested the catheterization of Mr. Lockard. Because the Dearborn Circuit Court's Order has not been invalidated as unconstitutional, the actions of Officer Miller in procuring Mr. Lockard's urine and blood in accordance with that order cannot be unconstitutional. Permitting plaintiff to proceed with a § 1983 action against Lawrenceburg for compliance with this order would permit the plaintiff to collaterally attack an otherwise valid judicial order.

The Seventh Circuit case of <u>Wollin v. Gondert</u>, 192 F.3d 616 (7th Cir. 1999) discussed the issue of collateral attack by way of a § 1983 action. In <u>Wollin</u>, a family court commissioner, in open court and in the plaintiff's presence, ordered the plaintiff to surrender a number of firearms contained

in his home. The plaintiff immediately left the family court. Upon suspicion that the plaintiff would not comply with his order, the commissioner contacted the police and instructed a police deputy that if the plaintiff refused to turn over the weapons, he (plaintiff) should be taken into custody. The plaintiff refused to surrender his firearms upon request by an investigating deputy. Thereafter, the plaintiff was taken into custody. The plaintiff then instituted a § 1983 action based on the arrest, alleging (among other things) that the commissioner did not have authority to authorize plaintiff's arrest.

The Seventh Circuit Court of Appeals discussed the propriety of plaintiff's collateral attack on the commissioner's order:

> "As we stated in Henry v. Farmer City State Bank, 808 F.2d 1228, 1238-39 (7th Cir. 1986), a sheriff was immune from suit under Section 1983 because he was at all times acting pursuant to an official court order to enforce a validly entered judgment when he performed the allegedly wrongful acts of which the defendants now complain. We concluded that to allow the plaintiff to attack the order collaterally by bringing a Section 1983 suit against the sheriff for damage would require sheriffs who enforce properly entered judgments pursuant to facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them. Such a result is untenable."

Id at 624, 625 (internal citations and quotations omitted).

In this case, similar issues are at hand: the Dearborn Circuit Court issued a valid judicial order specifically directing the procurement of Mr. Lockard's blood <u>and</u> urine. That order was carried out. Now, plaintiff seeks to contest the order's propriety by way of a § 1983 action. Wollin, both in its reasoning and in its precedential authority, is directly on point and precludes liability.

B. <u>Judicial Immunity</u>.

A similar analysis as that noted above was used to support a finding of judicial immunity in <u>Henry v. Farmer City State Bank</u>, 808 F.2d 1228 (7th Cir. 1986). Non-judicial officials whose official duties have an integral relationship with the judicial process are entitled to absolute immunity for the quasi-judicial conduct. <u>Id</u> at 1238. Thus, unlike qualified immunity, which is discussed below, judicial immunity (or quasi-judicial immunity) is an *absolute* immunity.

In <u>Henry</u>, a sheriff was sued under Section 1983 upon plaintiffs' allegations that the sheriff wrongfully entered the plaintiffs' home, seized their non-exempt personal property, and later sold that property at a public auction, all pursuant to an Illinois Circuit Court order directing the sheriff to enforce a judgment. <u>Id</u>. In discussing the application of judicial or quasi-judicial immunity to the claims, the Court said:

> "Although immunity is normally extended to those performing discretionary and not ministerial acts, those performing ministerial acts under a judge's supervision and intimately related to judicial proceedings have quasi-judicial immunity.
>
> Sheriff Massey was at all times acting pursuant to an official court order to enforce a validly entered judgment when he performed the allegedly wrongful acts of which the Henrys now complain. It is difficult to think of a task more intimately related to a judicial proceeding than that of enforcing a money judgment entered by a court. Because the sheriff was acting in furtherance of his official duties in aid of the court, he is entitled to quasi-judicial absolute immunity from suit for damages arising from those acts.
>
> The proper procedure for a party who wishes to contest the legality of a court order enforcing a judgment is to appeal that order and the underlying judgment, not to sue the official responsible for its execution... To allow the Henrys to attack the order collaterally by bringing a Section 1983 suit against the sheriff for damages would require sheriffs and other court officers to enforce properly entered judgments pursuant to facially valid court orders to act as appellate courts, reviewing the validity of both the enforcement orders and the underlying judgments before proceeding to collect on them. Such a

7

result is obviously untenable."

Id at 1238, 1239.

Thus, Henry provides for immunity in situations which are similar to the facts of this case. Here, the sheriff deputies acted in accordance with a direct order from the Dearborn Circuit Court. The Court order leaves no room for discretion:

> "You are hereby authorized **and ordered**, in the name of the State of Indiana with the necessary and proper assistance to obtain and remove a blood and urine sample from Jamie N. Lockard, date of birth [redacted], Social Security No. [redacted]. **You are ordered to seize such sample** obtained on such search, and to forward such samples for immediate analysis."

Affidavit of Brian Miller, Affidavit *Exhibit 2*.

Given the fact that Officer Miller was "ordered to seize" such a sample, he did not have any discretion regarding whether or not to obtain a urine sample from Mr. Lockard.

Because the law enforcement officers acted at the specific direction of a valid state court order, absolute quasi-judicial immunity attaches. Officer Miller, the City of Lawrenceburg, and Officer Michael Lanning are entitled to judgment in their favor as a matter of law.

C. Qualified Immunity.

The doctrine of qualified immunity insulates the individual officers from liability with regard to the plaintiff's claims. Qualified immunity acts as a safeguard to government and protects the public at large by avoiding excessive disruption of government and permitting the resolution of many insubstantial claims on summary judgment. Whether a defendant is entitled to summary judgment on qualified immunity grounds depends on whether a reasonable officer, in light of the information he possessed at the time, would have believed he had probable cause to act the way he acted. Wollin at 622.

Qualified immunity protects a law enforcement officer from personal exposure to liability when a reasonable officer acting in that officer's position could have believed that his actions were constitutional. This immunity has been extended to officers who acted without probable cause, so long as the officer reasonably believed that he had probable cause. Anderson v. Creighton, 107 S.Ct. 3074 (1987). Although it is an affirmative defense, the burden of defeating the assertion of qualified immunity rests with the plaintiffs. *See*, Sparing v. Village of Olympia Fields, 266 F.3d 684, 688 (7th Cir. 2001).

In order for liability to attach, the law in the area governing the officers' actions must be clear, and the officers must act contrary to the clear mandates of the law in that area. Thus, if the constitutionality of a certain action is at all in question, then the officers' actions cannot be plainly unconstitutional. *See also,* Malley v. Briggs, 475 US 335, 341, 106 S.Ct. 1092, 1096 (1996) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law.") The standard is an objective one, based upon published case reports, comparing the conduct in issue to such published reports. The first step is to identify the specific constitutional right allegedly violated. *See*, West v. Atkins, 487 U.S. 42, 48 (1988).

The right in issue "must be sufficiently particularized" in existing case law to "put defendant on notice that his conduct probably is unlawful." Abel v. Miller, 824 F.2d 1522, 1532-33 (7th Cir. 1987). Then, the defendants' actions are "defined or characterized according to the specific facts of the case" as then "compared to the body of law existing at the time of the alleged violation." Rakovich, 850 F.2d at 1208.

Qualified immunity is to be decided on the basis of all relevant precedents, including but not limited to a court's own governing precedents. Elder v. Holloway, 510 U.S. 510, 515 (1994). A conflict in the circuits can be some indication that the law is not clearly established. *See*, Benson v.

9

Alphia, 786 F.2d 268, 275 (7th Cir. 1986), *cert. denied* 479 U.S. 848 (1986).  If there is no binding precedent, a court will look at whatever decisional law is available, but the objective is to determine whether "it has been authoritatively decided that certain conduct is forbidden." Rakovich, 850 F.2d at 1209.  *See also*, Alliance to End Repression v. City of Chicago, 820 F.2d 873, 875 (7th Cir. 1987).  At the minimum, in order for a constitutional right to be clearly established, there must be "case law which clearly and consistently recognized the constitutional right." Lojuk v. Johnson, 770 F.2d 619, 628 (7th Cir. 1985).

The qualified immunity standard "gives ample room for mistaken judgments." Hunter v. Bryant, 502 U.S. 224, 228 (1991).  The accommodation for reasonable error exists because "officials should not err always on the side of caution for fear that they may be sued." Hunter v. Bryant, 502 U.S. at 229, *citing* Davis v. Scherer, 468 U.S. 183, 196 (1982).  It is clear that qualified immunity applies in Fourth Amendment cases, to shield officers from liability even when they act "reasonably unreasonable." *See*, Saucier v. Katz, 533 U.S. 194 (2001).

Qualified immunity under § 1983 is analogous to the good faith exception to the exclusionary rule in the context of search warrants.  Thus, the inquiry is confined to whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. Wollin at 624.  In discussing circumstances in the application of qualified immunity for an allegedly illegal search pursuant to a warrant, the Seventh Circuit in Wollin stated the following:

> "The rule we adopt in no way requires the police officer to assume a role even more skilled than the magistrate.  It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable under Section 1983.
>
> Similarly, **a deputy sheriff executing a directive issued by a**

10

> **trained and licensed practitioner of the law and duly appointed officer of the court, as the commissioner is, cannot be required to second guess the commissioner's order unless he clearly knows the order is outside the range of the commissioner's professional competence. A deputy who should only disobey a judicial officer's order when to his knowledge and belief the order constitutes an unacceptable error indicating gross incompetence or neglect of duty**."

Id at 624 (internal citations and quotations omitted; emphasis added).

Here, as in Wollin, the defendant officers were acting pursuant to a judicial order. Similarly, the Lawrenceburg officers were acting in accordance with a facially valid judicial order, which required them to procure Mr. Lockard's blood and urine. Officer Miller's training suggested that both blood and urine were useful in toxicology testing. Further, and as noted above, published case reports at the time of the plaintiff's arrest revealed that a non-consensual catheterization, standing alone, does not amount to a constitutional violation. See, Sparks v. Stutler, 71 F.3d 259 (7th Cir. 1995), Saulsberry v. Maricopa County, 151 F.Supp. 2d 1109 (D. Ariz. 2001), Rudy v. Village of Sparta, 990 F.Supp. 924 (W.D. Mich. 1996).

In other words, there was no information available to the Lawrenceburg officers at the time of the catheterization to suggest that they should disobey an order from a judicial officer, and no notice to the officers that catheterizing Mr. Lockard could violate a clearly established right. As such, qualified immunity shields them from liability.

    D.    There Is No Evidence That the City of Lawrenceburg
           Had a Policy or Practice of Violating the Plaintiffs' Civil Rights

There is no *respondeat superior* liability in a § 1983 action. A governmental entity is liable only when the entity itself is a moving force behind the constitutional deprivation. Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002) ("In order to prevail on an official capacity suit against the sheriff, the plaintiff must show that an official policy or custom caused the injury.") Thus, in an

official capacity suit the entity's policy or custom must have played a part in the violation of federal law. Id.  Therefore, absent a policy by the City of Lawrenceburg to violate the plaintiff's rights, the City of Lawrenceburg is entitled to summary judgment for all claims.

In this case, there is no evidence of any official policy or practice of the City of Lawrenceburg to violate the plaintiff's rights. Indeed, as argued above, the defendants contend that no evidence of any constitutional violation occurred *at all*, let alone as a result of an unconstitutional policy or practice.  Therefore, the City of Lawrenceburg is entitled to judgment in its favor as a matter of law.

### E. State Law Claims

Mr. Lockard did not serve a tort claim notice to any of the defendants. That failure bars all state laws claims against the Lawrenceburg defendants.  Kennedy v. McCarty, 803 F.Supp. 1470, 1476 (S.D. Ind. 1992), Walton v. City of Carmel, 2007 WL 3046424 (S.D. Ind. 2007).

### Conclusion

For all the foregoing reasons, the Lawrenceburg defendants request that the Court enter judgment as a matter of law in their favor, and against the plaintiff, and for all other just and proper relief in the premises.

              Respectfully submitted,

              CARSON BOXBERGER LLP

              By:   */s/ Jeremy M. Dilts*
                 Jeremy M. Dilts, #22335-49
                 Attorneys for defendants,
                 City of Lawrenceburg, Indiana,
                 Brian Miller and Michael Lanning

3100 John Hinkle Place, Suite 106
Bloomington, Indiana  47408
Telephone:  (812) 333-1225

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this, the 29th of September, 2010, a copy of the above and foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Douglas A. Garner, Esq.
ZERBE GARNER MILLER & BLONDELL
dagarner@zerbegarnerlaw.com

Steven J. Cohen, Esq.
ZEIGLER COHEN & KOCH
scohen@zcklaw.com

                                                                        */s/ Jeremy M. Dilts*
                                                                        Jeremy M. Dilts